IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IOWA SQUARE REALTY LLC, a New York limited liability company, | Civil Action No. 17-497 |
| Plaintiff, | |
| v. | United States Magistrate Judge Cynthia Reed Eddy |
| JSMN SHENANGO VALLEY MALL, LLC, a New Jersey limited liability company, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Presently pending before the Court is a motion for summary judgment filed on behalf of Plaintiff, Iowa Square Realty LLC, ("Lender"). (ECF No. 15). For the reasons stated herein, the motion will be granted.[1]

This lender foreclosure action was commenced on April 18, 2017. Discovery ended on October 1, 2017. (ECF No. 14). On October 10, 2017, Lender filed a motion for summary judgment (ECF No.15) with brief in support, as well as a concise statement of material facts and an appendix. (ECF Nos. 16, 17, and 18). On November 13, 2017 Defendant JSMN Shenango Valley Mall, LLC ("Borrower") filed a brief in opposition and concise statement of material facts (ECF Nos. 19, 20). The matter has been fully briefed and is ripe for disposition.

We have jurisdiction pursuant to 28 U.S.C. § 1332.

---

[1] The parties have consented to jurisdiction by a Magistrate Judge. (ECF No. 10). Under the Federal Magistrate Judges Act, "[u]pon consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). Consent of all parties to a case gives the magistrate judge full "authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003).

## I. Factual Background

### A. Loan to Original Lender

Unless otherwise noted, the following facts are not in dispute. On or about June 29, 2012, Paradigm Credit Corp. ("Original Lender") issued to Borrower and two affiliated entities, JSMN Shopping Center LLC, a New Jersey limited liability company, and JSMN Shopping Plaza LLC, a New Jersey limited liability company ( "Co-Borrowers"), a commercial mortgage loan in the principal amount of $3,250,000 (the "Loan"). The Loan is evidenced by a Mortgage Note dated June 29, 2012, executed by Borrower and Co-Borrowers in favor of Original Lender in the principal amount of $3,250,000 (the "Note"). As security for its obligations under the Note, Borrower executed in favor of Original Lender a Leasehold Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated as of June 29, 2012 (the "Mortgage").[2]

### B. Assignment of Loan to Lender

On or about December 23, 2014, Original Lender assigned the Loan to Lender.[3] By its terms, the Note, which is contained in the record at ECF No. 18 at 30-42, was originally scheduled to mature on June 30, 2013 (the "Original Maturity Date"), at which time "[a]ll accrued and unpaid interest and the then unpaid principal balance" would "be due and payable." (Note § 2.1(c) (ECF No. 18 at 31) The Original Maturity Date has been extended on multiple occasions by successive Loan Extension Agreements between the parties. Most recently, Borrower, Co-Borrowers and Lender entered into a Loan Extension Agreement dated January 1, 2017 (the "2017 Extension Agreement").

---

[2] The Mortgage encumbers the leasehold estate held by Borrower in the real property located at 3303 East State Street, Hermitage, Pennsylvania. The Mortgage was recorded with the Recorder of Deeds for Mercer County, PA on July 3, 2012, as No. 2012-00008635.

[3] In connection with the assignment of the Loan, Original Lender executed in favor of Lender an Assignment of Loan Documents, an Allonge to the Note, and an Assignment of Mortgage. The Assignment of Mortgage was recorded with the Recorder of Deeds for Mercer County, PA on February 2, 2015, as No. 2015-00001006.

### C. 2017 Extension Agreement and Two Payments Required Thereunder

The 2017 Extension Agreement, in the record as Exhibit F to the Motion for Summary Judgment (ECF No. 18 at 82-86) extended the Maturity Date of the Note until June 30, 2017. (2017 Extension Agreement § 2(d).) In consideration for that extension, Borrower agreed to make two separate and distinct payments each month for January through June, 2017. (Id. §§ 2(c), 3 and 4.) First, Borrower agreed to continue to make monthly interest payments on the Note in the amount of $29,166.28 on the 1st day of each month.[4] Second, Borrower agreed to pay a separate monthly extension fee in the amount of $38,461.00 on the 15th day of each month.[5]

### D. Event of Default

By its own admission, for each and every month beginning in January 2017, Borrower did not make the two monthly payments required by the 2017 Extension Agreement – i.e., the monthly interest payment in the amount of $29,166.28 on the first day of the month and the monthly extension fee in the amount of $38,461.00 on the 15th day of the month – but instead made to Lender just one monthly payment in the amount of $29,000 on the first day of the month.

The 2017 Extension Agreement provides that, "[e]xcept as herein specifically set forth, all terms, covenants and provisions contained in the Note and the Mortgage remain in full force and effect and are hereby ratified and confirmed." (2017 Extension Agreement § 8.) The Note defines an "Event of Default" to exist if, inter alia, Borrower "fails to pay any amount due and

---

[4] Section 2(c) of the 2017 Extension Agreement provided that "the Monthly Payment Amount shall equal Twenty Nine Thousand One Hundred Sixty Six Dollars and 28/100 ($29,166.28) Dollars, subject to adjustment as provided in the Note," while Section 4 of the 2017 Extension Agreement required that "[t]he monthly interest payments set forth in 2(c) above, shall be payable on the 1st day of each month commencing with January 1, 2017 and on the 1st day of each month thereafter through and including June 1, 2017." (2017 Extension Agreement §§ 2(c) and 4.)
[5] Section 3 of the 2017 Extension Agreement provided in pertinent part that "Borrower, in consideration of the extension of the Maturity Date, shall pay the sum of Thirty Eight Thousand Four Hundred Sixty One and 00/100 ($38,461.00) Dollars a month commencing on the 15th day of January, 2017 [and] on the 15th day of each month thereafter, through and including June 15, 2017." (2017 Extension Agreement § 3.)

payable to [Lender] under any Loan Document within ten (10) days after written demand therefor is made." (Note § 5.1(ii); see also Mortgage § D(1).)

The Mortgage provides that, "[u]pon the occurrence of any Event of Default, [Lender] will have the right, at its option, to declare any indebtedness and obligations secured by this Mortgage, irrespective of the maturity date specified in the Note or any note or agreement evidencing the same, due and payable immediately upon such declaration." (Mortgage § E(4); accord Note § 5.1.) The Mortgage also provides upon default for the imposition of specified late charges and default interest at the Default Rate of two percent per month. (Mortgage §§ E(14)-(15); accord Note §§ 6.1-6.2.)

Under the terms of the mortgage, upon the occurrence of any Event of Default, Lender "may, at its option, institute appropriate proceedings of foreclosure in equity or at law." (Mortgage § E(8).) Additionally, the it provides for payment of attorneys' fees and expenses incident thereto.[6]

After Borrower failed to make the requisite Payments in January and February 2017, Lender, through its counsel, made written demand for payment upon Borrower by letter dated March 2, 2017 (the "Demand for Payment") (ECF No. 18 at 88-91). Borrower then failed to make the missed monthly payments within 10 days of the Demand for Payment, thereby triggering an Event of Default. (See Note § 5.1(ii); Mortgage § D(1).) Following the Event of Default, Lender exercised its contractual right to accelerate the amounts due on the Loan (see Mortgage § e(4); Note § 5.1), providing notice of such acceleration to Borrower by Lender's

---

[6] Mortgagor agrees to bear all expenses (including reasonable attorneys' fees for legal services of every kind including fees to foreclose this Mortgage) of or incidental to the enforcement of any provisions hereof, . . ., and will pay to [Lender] any such expenses incurred, and such expenses shall be deemed an indebtedness secured by this Mortgage and shall be collectible in like manner as the principal Indebtedness secured by this Mortgage.

(Mortgage, § E(17)(b)).

4

counsel's letter dated March 15, 2017 (the "Notice of Acceleration") (ECF No. 18 at 93).

It is undisputed that Borrower has not paid the amounts due and demanded by Lender. Borrower admits that, "as of August 1, 2017, the loan balance is $2,500,000" exclusive of accrued interest, default interest and fees. (Borrower's Answer to Lender's Interrogatory No. 18) (ECF No. 18 at 109).

As previously explained, the 2017 Extension Agreement required that Borrower make to Lender for each month from January through June, 2017, two separate and distinct payments: (i) a monthly interest payment of $29,166.28 on the 1st day of each month; and (ii) an extension fee of $38,461.00 on the 15th day of each month. (2017 Extension Agreement §§ 2(c), 3 and 4.) Borrower admits it did not make the two monthly payments mandated by the 2017 Extension Agreement, but instead each month made just one payment in the amount of $29,000 on the first day of the month. (See Answer ¶ 26.) This is not in dispute. Lender's Concise Statement of Material facts states:

> 27. By its own admission, for each and every month beginning in January 2017, Borrower did not make the two monthly payments required by the 2017 Extension Agreement – i.e., the monthly interest payment in the amount of $29,166.28 on the first day of the month and the monthly extension fee in the amount of $38,461.00 on the 15th day of the month – but instead made to Lender just one monthly payment in the amount of $29,000 on the first day of the month. (Compl. ¶ 26; Answer ¶ 26.)

(ECF No. 16 at 6). In response, Borrower's Concise Statement states "Admitted." (ECF No. 20 at 4).

Separate and apart from Borrower's monthly payment default, the Loan otherwise matured under the 2017 Extension Agreement on June 30, 2017, at which time "[a]ll accrued and unpaid interest and the then unpaid principal balance [was] due and payable." (Note § 2.1(c); 2017 Extension Agreement § 2(d).) It is undisputed that Borrower failed to pay all accrued and

unpaid interest and the then unpaid principal balance of the Note on or before the Maturity Date. Indeed, as noted above, Borrower has admitted that, "as of August 1, 2017, the loan balance is $2,500,000" exclusive of accrued interest, default interest and fees. (Borrower's Answer to Lender's Interrogatory No. 18.)

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). A grant of summary judgment under Federal Rule of Civil Procedure 56(a) is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine issue of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 247-48. As to materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. However, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *N.A.A.C.P. v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine issues. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex v. Catrett,* 477 U.S. 317, 323-24 (1986). Once the moving party satisfies its burden, the

non-moving party then must present sufficient evidence of a genuine issue, in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the Court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Further, the benefit of the doubt will be given to the non-moving party when there is a conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 Fed. Appx. 139, 141 n. 4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

**III.     Discussion**

"In a mortgage foreclosure action, the plaintiff must demonstrate the existence of an obligation secured by a mortgage, and a default on that obligation." *Bank of America, Nat. Ass'n v. Scranton Center Holdings*, LP, No. 10–CV–1251, 2012 WL 1965415, *2 (M.D. Pa. May 31, 2012) (quoting *Chemical Bank v. Dippolito*, 897 F.Supp. 221, 224 (E.D. Pa.1995)). "Upon default, the holder of a mortgage can legally proceed to enforce the terms of the mortgage either by foreclosure proceedings or by obtaining judgment on the bond accompanying the mortgage and issuing a writ of execution." *Cunningham v. McWilliams*, 714 A.2d 1054, 1056–1057 (Pa. Super. 1998). "The entry of summary judgment is proper if the mortgagors admit that the mortgage is in default, that they have failed to pay interest on the obligation, and that the recorded mortgage is in the specified amount." *Id.* at 1057 (quoting *Landau v. W. Pa. Nat'l Bank*, 445 Pa. 217, 282 A.2d 335, 340 (1971)); *see also Wilson v. Parisi*, 549 F.Supp.2d 637, 655 (M.D. Pa. 2008).

Here, there is no dispute that Borrower signed the Note, Mortgage, and the 2017 Extension Agreement, nor is there a reasonable dispute regarding the terms of any of these

agreements. The Mortgage was properly recorded with the Recorder of Deeds for Mercer County, Pennsylvania, and again recorded following the assignment of the Mortgage. There is no dispute that borrower failed to pay off the Loan at maturity on June 30, 2017.

Borrower takes issue with a narrow portion of the motion, contesting whether it was required to timely pay the monthly loan extension fees in their entirety, triggering Lender's ability to collect accrued late charges for monthly loan extension fees from their due date, not the date of maturity of the loan as provided by the 2017 Loan Extension Agreement. Lender takes the position that under the clear and unambiguous terms of the 2017 Extension Agreement, in lieu of paying a monthly extension fee on the 15th day of each month in the amount of $38,461, Borrower had the option of paying its monthly extension fee in the amount of $33,461 and deferring the remaining $5,000/month until maturity.

Section 3 of the 2017 Extension Agreement states:

> Borrower, in consideration of the extension of the Maturity Date, ***shall pay the sum of Thirty Eight Thousand Four Hundred Sixty One and 00/100 ($38,461.00) Dollars a month*** commencing on the 15th day of January, 2017 [and] on the 15th day of each month thereafter, through and including June 15, 2017. Time is of the essence as to said payments. In the event such monthly extension fees are not timely paid, Borrower shall pay a late charge of $1,000.00 per day for each and every day until the said extension fee is actually paid. Notwithstanding the foregoing, ***Borrower, at its option, may defer up to $5,000.00 per month of said extension fees, in which event, any deferred payments shall be due and payable upon the earlier of the Maturity Date*** or loan payoff date. Borrower acknowledges that as of December 31, 2016 the sum of $60,000.00 has accrued and is unpaid for deferred extension fees.

2017 Extension Agreement § 3 (emphasis added). Lender argues that while it is true that the 2017 Extension Agreement permitted Borrower to defer the payment of a limited portion of each monthly extension fee until maturity, it is undisputed that Borrower never paid the balance of the extension fees that were due each month. Based on the record before us, there is no dispute that Borrower did not pay a monthly extension fee in either amount, but rather, made each month a

8

single payment to Lender in the amount of $29,000 on the first day of the month, thus the monthly payment was short of the reduced extension fee of $33,461 per month required if Borrower sought deferral of a portion of the fee until maturity.

Accordingly, the Court concludes that Lender has met its summary judgment burden. *See United States v. Abell*, No. 09–715, 2012 U.S. Dist. LEXIS 2096, 2012 WL 37627 (M.D. Pa. Jan. 9, 2012) (the plaintiff in mortgage foreclosure action entitled to summary judgment when undisputed facts showed that the plaintiff loaned a specific amount of money to the defendants, the defendants executed a mortgage as security for the loan, and the defendants defaulted on that loan). Borrower defaulted on its contractual obligation to pay the monthly extension fee starting with the January 15, 2017 due date, and Lender is thus entitled to recover the contractual late charge of $1,000/day from the date of that default. Under Pennsylvania law, "parties have the right to make their own contract, and it is not the function of a court to rewrite it or to give it a construction in conflict with the accepted and plain meaning of the language used." *Meeting House Lane, Ltd. v. Melso*, 628 A.2d 854, 857 (1993), *citing, Amoco Oil Co. v. Snyder*, 478 A.2d 795, 798 (1984); *Hagerty v. William Akers, Jr. Co.*, 20 A.2d 317, 318 (1941) Accordingly, we will grant Lender's motion for summary judgment, and enter judgment in mortgage foreclosure in Lender's favor.

According to Lender, as stated in its brief in support of the motion for summary judgment and as reflected in the record (specifically, in the affidavit of Igal Namdar, the sole member of Lender), the total amount due and owing on the Loan through September 30, 2017, is

$3,340,720.06. (ECF No. 17 at 8, ECF No. 18 at 27). Its calculations are as follows:

| | |
|---|---:|
| Principal Balance | $2,499,966.56 |
| Accrued Interest (4/1/17 – 9/30/17) | 116,665.12 |
| Accrued Late Charges (1/1/16 – 11/14/16) | 147,962.38 |
| Accrued Late Charges (11/15/16 – 9/30/17) | 306,000.00 |
| Unpaid Extension Fees (1/15/17 – 6/15/17) | 231,126.00 |
| Deferred Extension Fees | 60,000.00 |
| Accrued Legal Fees | 9,000.00 |
| TOTAL AMOUNT DUE a/o 9/30/17 | $3,430,720.06 |

(Affidavit of Igal Namdar ("Namdar Affidavit")[11] ¶ 10.) We find that under the clear terms of the various contracts, judgment should be entered in favor of the Plaintiff in the amount of $3,430,720.06, plus interest at the contractual default rate from October 1, 2017 to the date of any Marshal's or other appropriate judicial sale of the property. An appropriate order follows.

**IV.     Conclusion**

For the reasons set forth herein, the motion for summary judgment will be granted. A Judgment Order pursuant to Fed. R. Civ. P. 58 (a) will be entered separately.

AND NOW this 8th day of February, 2018, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (ECF No. 15) be and the same is hereby GRANTED.

By the Court:

s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:  all counsel of record